UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CARL REED, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 1:21-cv-01144-TWP-TAB |
| | ) | |
| WENDY KNIGHT, | ) | |
| | ) | |
| Respondent. | ) | |

**ENTRY DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

In September 2020, Carl Reed was punished through the Indiana Department of Correction's (IDOC) Disciplinary Code for conspiracy to traffic. Mr. Reed challenges the evidentiary basis for his disciplinary conviction and seeks a writ of habeas corpus. Because the evidentiary record clears the meager threshold for prison disciplinary proceedings, Mr. Reed's petition is denied.

**I. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: 1) the issuance of at least 24 hours advance written notice of the charge; 2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; 3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and 4) "some evidence in the record" to support the finding of guilt.

*Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974).

## II. The Disciplinary Proceeding

On March 27, 2020, prison staff found a ripped-up letter in a trash bag in an inmate area at Correctional Industrial Facility ("CIF").[1] Dkt. 7. Investigators pieced the letter back together. *Id.* The letter discussed routes to bring drugs into CIF and how to split the proceeds of any drugs brought into CIF. *Id.* It also named associates outside the prison who could package drugs for delivery into the facility. *Id.*

After review of the letter, investigators determined that it was written by an inmate and that it was written to his son, who was also an inmate. *Id.* Based on this information, investigators suspected that the letter was written by Mr. Reed, whose son was also incarcerated at CIF at the time. *Id.* They determined that the handwriting in the letter was similar to Mr. Reed's based on other documents submitted to prison staff, *id.*, and he later admitted in an interview that the handwriting in the letter looked like his handwriting, dkt. 10. Investigators also reviewed recordings of Mr. Reed's telephone calls; in some of those calls, he appeared to try to put his associates in touch with a CIF staff member and also made statements suggesting that he was planning to use an associate outside the prison to traffic drugs into CIF. Dkt. 7.

Mr. Reed was charged with conspiracy to traffic (code number A-111/113). Dkt. 6-1. Mr. Reed pled not guilty. Dkt. 6-3.

The hearing took place on August 28, 2020. At the hearing, Mr. Reed provided a witness statement from an investigator. Dkt. 6-8. In the statement, the investigator admits that: Mr. Reed

---

[1] The facts in the first two paragraphs of this section are taken from the confidential report of investigation prepared by CIF investigators, dkt. 7, and the video of an interview with Mr. Reed, dkt. 10, both of which were filed ex parte due to security concerns. Because of the sensitive nature of the report and the video, the Court summarizes their contents.

has never stated that his son agreed to the drug-trafficking plan set forth in the pieced-together letter; Mr. Reed never asked his family or CIF staff to bring drugs into CIF; Mr. Reed has never admitted that he sent his son the letter; and CIF staff never retrieved any drugs or contraband that Mr. Reed participated in bringing into CIF. *Id*. Mr. Reed's son also submitted a witness statement in which he denied receiving the letter from Mr. Reed. Dkt. 6-9. Finally, at the hearing, Mr. Reed stated that he could not have engaged in a conspiracy because he just "talked about" trafficking and "nothing was ever done. I'm probably guilty of something but not this." Dkt. 6-6 (Report of Disciplinary Hearing); *see also* dkt. 14 at 5 (Mr. Reed's Statement of Relevant Facts).

The hearing officer found Mr. Reed guilty based on staff reports, Mr. Reed's statement, video evidence, the confidential case report, and evidence from witnesses. Dkt. 6-6. The hearing officer sanctioned Mr. Reed with a written reprimand, a 30-day loss of privileges, a six-month assignment to restrictive housing, a one-step credit class demotion, and a 180-day loss of earned-time credit. *Id*. Mr. Reed's administrative appeals were unsuccessful. Dkts. 6-10, 6-11.

### III. Analysis

Mr. Reed raises only one challenge to his disciplinary conviction: the sufficiency of the evidence against him. Dkts. 1, 14. In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is *any evidence* in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . .

is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted).

The "'some evidence' standard" is "a 'meager threshold.'" *Jones v. Cross*, 637 F.3d 841, 849 (7th Cir. 2011) (quoting *Scruggs*, 485 F.3d at 939). Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Id.* This Court may not "reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (citing *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)).

Mr. Reed was charged with conspiracy to traffic, in violation of Sections 111 and 113 of the IDOC's Disciplinary Code for Adult Offenders. Dkt. 6-1. A prisoner violates Section 111 (titled "Conspiracy/Attempting/Aiding or Abetting" by "[a]ttempting by one's self or with another person or conspiring or aiding and abetting with another person to commit any Class A offense." Dkt. 6-12 at 2; *also available at* https://www.in.gov/idoc/files/ADP-Attachment-I-Offenses-3-1-2020.pdf. A prisoner violates Section 113 (titled "Trafficking") by "[g]iving, selling, trading, transferring, or in any other manner moving an unauthorized physical object to another person; or receiving, buying, trading, or transferring; or in any other manner moving an unauthorized physical object from another person without the prior authorization of the facility warden or designee." *Id.* A violation of Section 113 is a Class A Offense. *Id.*

"Some evidence" supports the hearing officer's conclusion that Mr. Reed engaged in conspiracy to traffic, as defined by Sections 111 and 113. Investigators found a letter that discussed a plan to bring drugs into CIF. Dkt. 7. The letter appeared to have been written by an inmate father to his incarcerated son, and Mr. Reed's son was incarcerated at CIF at the time. *Id.* Investigators determined that Mr. Reed's handwriting was similar to the handwriting in the letter, and Mr. Reed

admitted that the handwriting in the letter looked like his. Dkts. 7, 10. In telephone calls, Mr. Reed appeared to try to put his associates in touch with a CIF staff member and also made statements suggesting that he was planning to use an associate outside the prison to traffic drugs into CIF. Dkt. 7. Finally, at the hearing, Mr. Reed appeared to concede that he had "talked about" trafficking drugs but argued that he was not guilty because his son never agreed to the plan and they never actually brought any drugs into CIF. Dkt. 6-6. This evidence does not necessarily prove beyond a reasonable doubt that Mr. Reed was attempting to traffic contraband into CIF, but it satisfies the "meager threshold" applicable in this case. *Jones*, 637 F.3d at 849.

Mr. Reed admits that "there is some evidence that [he] was attempting to engage in shady behavior," but he disputes that disputes that "the shady behavior was trafficking." Dkt. 14 at 8. Specifically, he argues that the evidence was not sufficient to support his conviction for violating Sections 111 and 113 because: (1) the conduct report does not allege that he conspired with someone outside the facility and does not even identify the person with whom he was allegedly conspiring, dkt. 1 at 6–7; (2) the conduct report does not allege that contraband items were actually brought into or taken out of CIF, *id*. 1 at 7–8; and (3) no contraband items were ever actually recovered, dkt. 14 at 9–10. As to the first argument, Section 111 does not require that an inmate conspire with another person, let alone a person outside the facility; instead, a violation is established if an inmate attempts to commit a Class A offense even if he does so by himself. Dkt. 6-12 at 2. Although the documents from the disciplinary proceeding refer to a *conspiracy*, Section 111 also punishes *attempted* misconduct, and the record includes sufficient evidence to support a finding that Mr. Reed was attempting to traffic drugs into CIF. As to the second argument, Mr. Reed is correct that no contraband was ever recovered, but he was not convicted of a completed

5

trafficking offense. He was convicted of *conspiring* or *attempting* to traffic. An inmate can be convicted of attempting to commit a Class A offense even if he is not successful in that attempt.

Finally, to the extent that Mr. Reed complains that the record includes exculpatory evidence, such as his son's statement that he never received the letter, the argument is not well taken. *See Rhoiney*, 723 F. App'x at 348 (once the Court finds some evidence supporting the disciplinary conviction, the inquiry ends, and the Court may not look to see if other record evidence supports a contrary finding).

### IV. Conclusion

For the reasons discussed in Part III, Mr. Reed's petition for a writ of habeas corpus challenging disciplinary case CIC 20-08-0018 is **denied**, and the action is **dismissed with prejudice**. The **clerk is directed** to enter **final judgment** consistent with this entry.

**IT IS SO ORDERED.**

Date:   2/3/2022

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

CARL REED
905097
PENDLETON - CORRECTIONAL INDUSTRIAL FACILITY
CORRECTIONAL INDUSTRIAL FACILITY
Inmate Mail/Parcels
5124 West Reformatory Road
PENDLETON, IN 46064

David Corey
INDIANA ATTORNEY GENERAL
david.corey@atg.in.gov

Natalie Faye Weiss
INDIANA ATTORNEY GENERAL
natalie.weiss@atg.in.gov